IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STEPHEN DUSENBERRY, | Civil Action |
| Plaintiff, | No. 21-162 |
| v. | |
| LIBERTY RISK CONSULTING, LLC, | |
| Defendant. | JURY TRIAL DEMANDED |

## CIVIL COMPLAINT

Plaintiff, Stephen Dusenberry, by undersigned counsel, files this Civil Complaint, and in support states the following.

### I. Jurisdiction and Administrative Exhaustion

1. Plaintiff invokes this Court's federal question jurisdiction pursuant to 28 U.S.C. § 1331, and this Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

### II. Parties

2. Plaintiff, Stephen Dusenberry, is an adult individual who resides in Allegheny County, Pennsylvania.

3. Defendant, Liberty Risk Consulting, LLC, is a Pennsylvania limited liability company with a principal place of business located at 1301 Riverside Drive, Beaver, PA 15009.

### III. Factual Background

4. Mr. Dusenberry worked for Defendant from January 2020 to November 18, 2020. His position was Senior Account Manager.

5. In November 2020, a family member of Mr. Dusenberry, with whom he had regular contact, was exposed to COVID-19 at the school where she worked.

1

6. On or about November 12, 2020, Mr. Dusenberry's physician advised him to self-quarantine at home until at least November 21, 2020.

7. Although Mr. Dusenberry tested negative for COVID-19 at the time, his doctor believed he still could have been infected due to the possibility of a false negative shortly after exposure. He therefore advised him to self-quarantine, particularly because he has an underlying preexisting condition that could subject him to complications if he were to contract COVID-19.

8. Mr. Dusenberry informed his employer of his doctor's orders, and provided a doctor's note indicating that he would be able to return to work on November 23, 2020.

9. At first, Defendant allowed Mr. Dusenberry to work from home.

10. However, on November 16, 2020, Mr. Dusenberry's shift supervisor, Starr Fedele, informed him via text message that Respondent's owner, Michael Morgan, wanted him to return to work two days later.

11. Shortly thereafter, Mr. Dusenberry learned that there had been two more positive COVID-19 cases at the school where his family member worked.

12. Mr. Dusenberry consulted with his physician about returning to work. In response, his physician told him that he needed to quarantine at home.

13. On November 17, 2020, Mr. Dusenberry told Ms. Fedele via text message that there had been three more positive cases at his family member's place of work, and his doctor was insisting that he quarantine.

14. In response, Ms. Fedele stated:

> You had a negative test so I'm not sure the extra few days at home is going to do to prevent the imaginary spread of a sickness you don't have. Please don't take any of that the wrong way, I just feel it's highly unnecessary and we've been lenient with you, so please show up to work tomorrow.
>
> If you can't show up then Mike wants me to start filling your shifts. I don't

want to have to do that because I think you're great Stephen but I feel this covid thing is being milked. A lot of people have kids in school who's school's have been positive for covid and still show up. So what are you going to do?

15. In response, Mr. Dusenberry said he was not comfortable going against his doctor.

16. The next day, November 17, 2020 at 9:32 pm, Defendant's owner, Mike Morgan, sent a message to a group of employees stating, "Stephen can't come into the office so if you want over time message starr."

17. That same night, Manager Chuck Trott sent Mr. Dusenberry a text message after 10:00 pm asking if he was coming in the next day.

18. In response, Mr. Dusenberry stated via text message that he was not comfortable going in without clearance, and his doctor ordered him to quarantine.

19. The same night, also after 10:00 pm, Defendant's owner, Michael Morgan, sent Mr. Dusenberry a text message asking him if he was coming in the next day.

20. In response, Mr. Dusenberry stated via text message that he had told Mr. Trott that he did not feel comfortable coming in because his doctor ordered him to stay home and quarantine.

21. In response, Mr. Morgan stated via text message, "Yeah, this is an issue for me."

22. The next day, November 18, Mr. Trott stated via text message that Mr. Dusenberry "no call no showed," and the company accepted his "resignation."

23. However, Mr. Trott was aware that Mr. Dusenberry was not planning to come in due to his doctor's orders.

24. Mr. Dusenberry did not resign.

25. The same day, Defendant sent Mr. Dusenberry a paycheck with the words "final check" written on the memo line.

26. The above "final check" was for the pay period spanning November 8 through

3

November 14, 2020.

27. Defendant did not pay Mr. Dusenberry for any days after November 14, 2020.

## COUNT I
### EPSLA: Interference and Retaliation

28. Plaintiff incorporates the allegations of Paragraphs 1 through 27 as if fully restated.

29. In November 2020, Defendant employed less than 500 employees.

30. As such, Defendant is an "employer" within the meaning of the Families First Coronavirus Response Act ("FFCRA") and the Emergency Paid Sick Leave Act ("EPSLA").

31. Mr. Dusenberry had been advised by a health care provider to self-quarantine due to concerns related to COVID-19.

32. Defendant would not permit Mr. Dusenberry to telework. Rather, it took the position that, as of November 18, 2020, work needed to be performed in the office.

33. As such, Mr. Dusenberry was an eligible employee within the meaning of the EPSLA.

34. Defendant fired Mr. Dusenberry because he exercised rights under the EPSLA, including the right to take leave when advised by a health care provider to self-quarantine.

35. Defendant failed to restore Mr. Dusenberry to an equivalent position at the end of his EPSLA-protected leave.

36. As such, Defendant has violated the EPSLA, the FFCRA, and the Fair Labor Standards Act ("FLSA").

37. As a direct and proximate result of Defendant's violation of the above statutes, Mr. Dusenberry has suffered damages, including lost wages and benefits.

## COUNT II
### EPSLA: Failure to Pay Sick Leave

38. Plaintiff incorporates the allegations of Paragraphs 1 through 37 as if fully restated.

39. Under the EPSLA, Mr. Dusenberry was entitled to be paid his regular rate of pay for up to ten days.

40. Defendant failed to pay Mr. Dusenberry for November 16, 17, 18, 19, and 20 despite his doctor's orders that he self-quarantine on those workdays.

41. As a direct and proximate result of Defendant's violation of the FFCRA, EPSLA, and FLSA, Mr. Dusenberry has suffered damages, including lost wages.

## COUNT III
### Wage Payment and Collection Law

42. Plaintiff incorporates the allegations of Paragraphs 1 through 41 as if fully restated.

43. Pursuant to the Pennsylvania Wage Payment and Collection Law, 43 Pa. Stat. § 260.1 *et seq.*, Mr. Dusenberry was entitled to compensation in the form of "wages" for each date that he worked.

44. Mr. Dusenberry teleworked on November 16, 2020.

45. Defendant failed to pay Mr. Dusenberry for November 16, 2020.

46. More than 30 days have passed since Mr. Dusenberry's regularly scheduled pay day.

47. Defendant's failure to pay Plaintiff is not based on a good faith dispute as to Plaintiff's entitlement to wages.

48. Therefore, pursuant to 43 Pa. Stat. § 260.10, Mr. Dusenberry is also entitled to liquidated damages equal to 25% of the total amount of wages due.

WHEREFORE, Plaintiff demands judgment against Defendant and requests that the Court

order the following relief:

    a. Defendant shall reinstate Plaintiff into the position he held, together with all benefits incident thereto, including, but not limited to wages, commissions, stock units, fringe benefits, training and seniority, or shall pay Plaintiff front pay if reinstatement is not feasible;

    b. Defendant shall compensate Plaintiff for the full value of wages he would have received had it not been for Defendant's illegal treatment of Plaintiff, with interest until the date Plaintiff is offered employment into a position substantially equivalent to the one which Plaintiff occupied;

    c. Defendant shall compensate Plaintiff for lost benefits, including profit sharing, stock options and/or pension benefits;

    d. Defendant shall pay Plaintiff liquidated damages in an amount equal to lost wages and benefits under the EPSLA;

    e. Defendant shall pay Plaintiff liquidated damages in an amount equal to 25% of his lost wages and benefits under the Wage Payment and Collection Law;

    f. Defendant shall be enjoined from discriminating against Plaintiff in any manner that violates the FLSA, FFCRA, and EPSLA;

    g. Plaintiff shall be awarded against Defendant the costs and expenses of this litigation and a reasonable attorney fee; and

    h. Plaintiff shall be granted such further legal and equitable relief as the Court may deem just and proper.

Respectfully submitted,

**ELZER LAW FIRM, LLC**

/s/ Christine T. Elzer
Christine T. Elzer
Pa. I.D. No. 208157
100 First Avenue
Suite 1010
Pittsburgh, PA 15222
(412) 230-8436

Attorney for Plaintiff